United States District Court
Southern District of Texas
FILED

NOV 1 2 2003

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN ESCOBEDO | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-02-172 |
| | § | |
| STEPHEN ESSES, M.D., | § | JURY |
| F.A. RICHARD & ASSOCIATES, INC. | § | |
| and JANE ROSAMOND | § | |

## PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Federal Rule of Civil Procedure 60, Plaintiff Juan Escobedo files this Motion for Relief from Judgment. In this motion, Plaintiff asks the Court to grant him relief from the summary judgment and final judgment entered against him on October 16, 2003 on the ground that the judgment was entered due to the mistake of his attorney, Michael R. Cowen.

This is a medical negligence case filed by Juan Escobedo against Dr. Stephen Esses.[1] On August 5, 2003, Defendant Esses filed a motion for summary judgment. Under Local Rules 7.3 and 7.4 of the Southern District of Texas, the Court could have taken the motion under submission as early as August 25, 2003. However, prior to the appointment of the Honorable Judge Hanen, in the experience of Plaintiff's counsel the local custom had always been to hold a hearing on summary judgment motions, and that Plaintiff would have until the day before the hearing to file a response. (Exhibit A). As a result, Plaintiff did not file a response to the motion. On October 14, 2003, this Court signed an order granting summary judgment. The order was entered by the District Clerk on October 16, 2003.

---

[1] Plaintiff also filed claims against F.A. Richard & Associates, Inc. and Jane Rosamond. However, Plaintiff does not seek relief from the judgment granted in their favor. Plaintiff only seeks to revive his case against Stephen Esses.

Federal Rule of Civil Procedure 60(b) empowers a District Court to relieve a party from a final judgment for certain reasons, including "mistake," "inadvertence," "excusable neglect," and "any other reason justifying relief from the operation of the judgment." "The term 'excusable neglect' . . . is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Union Pac. R.R. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 782 (8th Cir. 2001). In deciding a Rule 60(b) motion, "a district court ought not to focus narrowly on the negligent act that caused the default and act whether the act was itself in some sense excusable. Instead, the court should take into account 'all relevant circumstances surrounding the party's omission.'" *Id.*

There is evidence to show that Dr. Esses was negligent in his treatment of Plaintiff, and that this negligence caused Plaintiff damages. The expert report of Jose Kuri, M.D., which is attached as Exhibit B, sets out Dr. Esses' negligence and the damage it caused Juan Escobedo. The only reason that a timely response was not filed is that Plaintiff's counsel neglected to file it. Plaintiff asks the Court find this failure to constitute a "mistake," "excusable neglect," and a "reason justifying relief from the operation of the judgment."

Plaintiff's counsel's refusal to timely file a summary judgment response is excusable, as that term is used in Rule 60(b)(1), because Plaintiff's counsel relied on local custom. (Exhibit A). Plaintiff's counsel has practiced before Federal Courts in Brownsville, Texas since 1997.[2] (Exhibit A). During this time, although he was aware that the Local Rules technically required motion responses within twenty days, the local custom had been not to rule on a motion for summary judgment without first holding a hearing. (Exhibit A). Therefore, Plaintiff's counsel felt safe in not

---

[2]Plaintiff's counsel was admitted to practice in the Southern District of Texas in 1996, while serving as a law clerk to the Honorable Reynaldo G. Garza. However, he did not appear before the Court as an advocate until 1997.

responding to a summary judgment motion until there was a hearing or pretrial conference set. (Exhibit A). This practice (which Plaintiff's counsel assures the Court has now ceased) was not based on laziness or sloth, but rather on time management; Plaintiff's counsel works at least 55-65 hours per week, and focuses his efforts on the most pressing tasks, (Exhibit A). While Plaintiff's counsel acknowledges that he failed to comply with the Local Rules, he asks the Court to view this neglect as excusable, and to grant Plaintiff relief from the summary judgment. Plaintiff's counsel asks that Plaintiff not have to suffer for his attorney's mistake.

WHEREFORE, PREMISES CONSIDERED, Plaintiff asks that the Court GRANT this motion and give him relief from the final judgment and summary judgment entered in favor of Defendant Stephen Esses, M.D.

RESPECTFULLY SUBMITTED,

MICHAEL R. COWEN, P.C.
520 E. Levee Street
Brownsville, Texas 78520
Telephone (956) 541-4981
Facsimile (956) 504-3674

By: _____
Michael R. Cowen
Texas Bar No. 00795306
Federal ID No. 19967

## CERTIFICATE OF SERVICE

On this the ___12th___ day of November, 2003 a true and correct copy of the foregoing document was sent to opposing counsel in the manner indicated below:

Mr. Vaughn E. Waters
THORNTON, SUMMERS, BIECHLIN,
DUNHAM & BROWN, L.C.
Bank of America - Suite 1000
500 North Shoreline Blvd.
Corpus Christi, TX 78471

Mr. Jeffrey B. McClure
ANDREWS & KURTH, L.L.P.
600 Travis, Suite 4200
Houston, TX 77002

Michael R. Cowen

STATE OF TEXAS            }
                          }
COUNTY OF CAMERON         }

### AFFIDAVIT OF MICHAEL R. COWEN

ON THIS DAY appeared before me, the undersigned Notary Public, Michael R. Cowen, a person known to me, who deposed upon his oath as follows:

"My name is Michael R. Cowen. I am over the age of twenty-one, have never been convicted of a felony, an am competent to give this affidavit. All of the facts set out herein are true and correct, and are within my personal knowledge.

I am an attorney practicing in Brownsville, Texas. I am licensed by the State of Texas, and am admitted to practice before the United States District Court for the Southern District of Texas. I have practiced in Brownsville, Texas since April, 1997.

I represented Juan Escobedo in Civil Action Number B-02-172, *Juan Escobedo v. Stephen Esses, M.D., et al.* Due to my mistake, inadvertence, and excusable neglect, I did not timely file a response to Dr. Esses' Motion for Summary Judgment. While I was aware that the Local Rules provide that the Court may rule on a motion after it has been pending for twenty days, in my experience the local practice and custom in the Brownsville Division was not to rule on a summary judgment without holding a hearing, usually at a pretrial conference. I learned about this local custom because I was so instructed while I worked as an associate for the Law Offices of Edward A. Stapleton. Therefore, I made the mistake of not filing a response to the summary judgment, and instead working on other legal matters. I did not fail to file the response out of laziness or sloth; I was working at least 55-65 hours a week, 7 days per week, during the relevant time period. I just worked on other matters because I mistakenly thought that I could file a response to the summary judgment later.

Had I filed a response, it would have created an issue of fact as to Juan Escobedo's claims against Dr. Esses. I would have attached an affidavit from Dr. Jose Kuri, Plaintiff's expert witness, which would have set out Dr. Esses' negligence and the damage it caused. I would also have taken the deposition of Dr. Madhavan Pisharodi, one of Plaintiff's treating physicians, who I believe (based on my interviews with the witness) would testify that Dr. Esses departed from the standard of care and caused harm to Juan Escobedo.

Therefore, I ask the Court to grant Juan Escobedo relief from the summary judgment and to allow this case to proceed on the merits."

_____
Michael R. Cowen

Exhibit A

SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public, on this 12th day of November, 2003.



_____
Notary Public, State of Texas

## 4590i EXPERT REPORT

My name is Jose Kuri, M.D. I am a neurosurgeon practicing in Brownsville, Texas.

I am actively practicing medicine, and I was practicing medicine at all times relevant to this report. I have actively practiced neurosurgery for several decades and treat patients in my neurosurgery practice. I was a practicing neurosurgeon on September 26, 2000.

As part of my neurosurgery practice, I have performed numerous surgeries on the lumbar spine, including instrumentation and fusions. I have also assisted in numerous instrumentations and fusions of the lumbar spine. This experience, together with my education and training, gives me knowledge of the accepted standards of medical care for the diagnosis, care, and treatment of the illness, injury, or condition involved in Juan Escobedo's claim–specifically, the care and treatment of lumbar disc injuries following a previous surgery.

I have reviewed the medical records of Juan Escobedo from Dr. Steven Esses, Dr. Madhavan Pisharodi, and Dr. Eric Six. On September 26, 2000, Dr. Esses performed surgery on Juan Escobedo. The preoperative diagnosis included status post decompression, L4-5; status post decompression, L5-S1; status post soft fusion L4-5; status post soft fusion, L5-S1; degenerative disc disease, L4-5; degenerative disc disease, L5-S1; spinal stenosis, L4-5; spinal stenosis, L5-S1; **hypermobility, L4-5; and hypermobility, L5-S1.** Dr. Esses performed the following procedures: decompression L4-5; decompression, L5-S1; bilateral foraminotomy, L4-5; bilateral foraminotomy, L5-S1; partial laminectomy, L4; complete laminectomy, L5; bone graft harvesting from the right iliac crest; segmental instrumentation with Miami-Moss implant, L4, L5, S1; posterolateral fusion, L4-5; and posterolateral fusion, L5-S1.

When performing a lumbar fusion with instrumentation on a patient with hypermobility in the surgical levels, the standard of medical care is to use cross links to stabilize the fusion. The cross links give the spine the stability it needs. Without cross links, it is very likely that a patient with hypermobility at L4-5 and L5-S1 who undergoes a fusion with instrumentation at those same levels will not get relief from the surgery.

By not using cross links to stabilize the fusion, Dr. Steven Esses failed to meet the standard of medical care when performing surgery on Mr. Escobedo. The failure to use cross links resulted in a surgery that did not provide him with relief. As such, Mr. Escobedo continues to suffer from severe back pain to this day. This result was proximately caused by Dr. Esses' failure to use cross links. In reasonable medical probability, Mr. Escobedo's current condition would have been substantially better if cross links had been used to stabilize the fusion. His spine would be more stable, and his pain would be less. Most importantly, he would not currently need a second surgery at the same levels as the surgery performed by Dr. Esses on September 26, 2000.

Jose Kuri, M.D.

Exhibit B